**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **KEVIN MORRIN** | ) |
|  | ) Case No.: |
| Plaintiff, | ) |
|  | ) Hon. |
| v. | ) |
|  | ) **Jury Trial Demanded** |
| **INCENTER LENDING SERVICES,** | ) |
| **LLC d/b/a INCENTER LENDER** | ) |
| **SERVICES** | ) |
|  | ) |
| Defendant. | |

## COMPLAINT

Plaintiff Kevin Morrin ("Plaintiff") brings this Complaint against InCenter Lending Services, LLC d/b/a InCenter Lending Services ("Defendant" or "InCenter") and alleges as follows:

## I. INTRODUCTION

1. This is an action for interference with and retaliation for the exercise of rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and for disability discrimination, failure to accommodate, hostile work environment, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*

2. Defendant disciplined and terminated Plaintiff immediately after he returned from protected FMLA leave taken for inpatient treatment of a serious health

condition, alcohol use disorder, and used pretextual performance allegations to mask unlawful retaliation and discrimination.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

4. This Court has jurisdiction pursuant to 29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 12117.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts business in this District and the events giving rise to Plaintiff's claims occurred in this District.

## III. PARTIES

6. Plaintiff Kevin Morrin is an adult individual residing in the Commonwealth of Pennsylvania.

7. Defendant is a business entity with its principal place of business at 550 Pinetown Road, Ste 208, Fort Washington, Pennsylvania, 19034 and at all relevant times employed fifty (50) or more employees.

## IV. FACTUAL ALLEGATIONS

8.  Plaintiff began his employment with Defendant in or about October 2022 as a Commercial Account Executive.

9.  Plaintiff was compensated at approximately $50,000 annually, plus commissions and benefits, and was employed on a full-time basis.

10. Upon hire, Plaintiff was verbally informed of a monthly sales quota of approximately $30,000 in premium sales; however, Defendant did not provide a written job description or clear performance metrics.

11. From October 2022 through August 2023, Plaintiff's performance fluctuated, at times meeting or exceeding expectations and at other times falling short, consistent with normal sales variability.

12. In or about August 2023, Defendant reassigned Plaintiff to an Account Manager role, removing sales quotas and assigning him responsibility for account renewals. Plaintiff performed this role from approximately August 2023 through April 8, 2024.

13. Plaintiff suffers from alcohol use disorder, a disability within the meaning of the ADA, which substantially limits one or more major life activities, including neurological and brain function.

14. In early March 2024, Plaintiff's condition worsened, requiring inpatient medical treatment.

15. From approximately March 4, 2024, through April 8, 2024, Plaintiff took approved leave under the FMLA for detoxification and inpatient treatment.

16. Defendant was aware that Plaintiff's leave was for a serious health condition and approved the leave.

17. Plaintiff returned to work on or about April 11, 2024.

18. On Plaintiff's first day back from FMLA leave, Defendant informed him that his role would be changed back to a Commercial Account Executive position with aggressive sales quotas.

19. That same day, Defendant issued Plaintiff a Performance Improvement Plan ("PIP"), citing alleged performance deficiencies during a period when Plaintiff had been on approved medical leave.

20. The PIP imposed unrealistic and unattainable sales quotas, including immediate requirements of $10,000 in premium for the remainder of April 2024, increasing to $25,000 in May and $30,000 in June.

21. The PIP was designed to set Plaintiff up for failure and to create a paper trail justifying termination.

22. Plaintiff attempted to negotiate the terms of the PIP with senior management, including Arthur Muti and Craig Eagleson, and temporary reduced quotas were discussed.

23. Despite these discussions, Defendant did not provide Plaintiff a meaningful opportunity to complete the PIP.

24. On or about May 1, 2024, less than three weeks after returning from FMLA leave, Defendant terminated Plaintiff's employment.

25. Defendant's actions occurred in close temporal proximity to Plaintiff's protected FMLA leave and disclosure of his disability.

26. Defendant did not engage in an interactive process or provide reasonable accommodation related to Plaintiff's disability.

27. Defendant's stated reasons for termination were pretextual and inconsistent with Plaintiff's employment history and the timing of events.

28. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered lost wages, lost benefits, emotional distress, humiliation, and other damages.

29. Additionally, on June 17, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission ("PHRC"). The Charge was assigned No. 530-2024-06886. Administrative remedies have been exhausted, and a Notice of Right to Sue was issued on December 19, 2025. See Exhibit A.

30. The Pennsylvania Human Relations Act ("PHRA") requires a complainant to allow the PHRC one year to investigate before pursuing claims in court. More than one year has elapsed since the dual filing of the Charge.

31. The Defendant is responsible for the actions of its agents under a theory of *Respondeat Superior*.

32. There were continuing violations in this case.

## COUNT I – FMLA INTERFERENCE (29 U.S.C. § 2615(a)(1))

30. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

31. Plaintiff was an eligible employee under the FMLA.

32. Defendant was a covered employer under the FMLA.

33. Plaintiff was entitled to take FMLA leave for a serious health condition.

34. Plaintiff provided sufficient notice of his need for FMLA leave, which Defendant approved.

35. Defendant interfered with Plaintiff's FMLA rights by failing to restore him to the same or an equivalent position upon return from leave and by using his leave as a negative factor in employment decisions.

36. Defendant's actions violated the FMLA.

## COUNT II – FMLA RETALIATION (29 U.S.C. § 2615(a)(2))

37. Plaintiff incorporates by reference the preceding paragraphs.

38. Plaintiff engaged in protected activity by taking FMLA leave.

39. Defendant subjected Plaintiff to adverse employment actions, including discipline and termination.

40. There was a causal connection between Plaintiff's protected activity and Defendant's adverse actions.

41. Defendant retaliated against Plaintiff in violation of the FMLA.

## COUNT III – ADA/PHRA DISABILITY DISCRIMINATION

42. Plaintiff incorporates by reference the preceding paragraphs.

43. Plaintiff is a qualified individual with a disability under the ADA/PHRA.

44. Defendant discriminated against Plaintiff on the basis of his disability by disciplining and terminating him.

45. Defendant's conduct violated the ADA/PHRA.

## COUNT IV – ADA/PHRA FAILURE TO ACCOMMODATE

46. Plaintiff incorporates by reference the preceding paragraphs.

47. Defendant failed to engage in the interactive process and failed to provide reasonable accommodation.

48. Defendant's conduct violated the ADA/PHRA.

## COUNT V – ADA/PHRA RETALIATION

49. Plaintiff incorporates by reference the preceding paragraphs.

50. Plaintiff engaged in protected activity by requesting leave and accommodation.

51. Defendant retaliated against Plaintiff for engaging in protected activity.

## V. DAMAGES

52. Plaintiff seeks back pay, front pay, liquidated damages, compensatory damages, emotional distress damages, punitive damages, attorneys' fees, costs, and interest.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, awarding all appropriate relief.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby respectfully demands trial by jury on all counts so triable.

DATED this the 2nd day of March 2026.

*<u>By: /s/ Jeremy A. Donham, Esquire</u>*
Jeremy Donham, (206980)
**DONHAM LAW**
714 Venture Drive, Ste. 144
Morgantown, West Virginia 26508
717.881.7855 (Phone)
Email: J.Donham@Donhamlaw.com